DENNIS CUNNINGHAM, CSB 112910
BEN ROSENFELD, CSB 203845
Law Office of Dennis Cunningham
115 ½ Bartlett Street
San Francisco, CA 94110
Tel:     (415) 285-8091
Fax:    (415) 285-8092
denniscunningham@juno.com
ben.rosenfeld@comcast.net

WILLIAM SIMPICH, CSB 106672
Attorney at Law
1736 Franklin Street, Tenth Floor
Oakland, California 94612
Tel: (510) 444-0226
Fax: (510) 444-1704

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL CHERNEY,<br><br>        Plaintiff,<br><br>v.<br><br>THE FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>        Defendants. | Case No. C-91-1057 CW (JL)<br><br>PLAINTIFF'S OBJECTION TO DESTRUCTION OF EVIDENCE OF WHO BOMBED JUDI BARI; MOTION FOR AN ORDER *IN REM* GRANTING ACCESS FOR TESTING; AND NOTICE AGAINST SPOILATION<br><br>Date:     September 8, 2010<br>Time:    9:30 am.<br>Place:    Courtroom F, 15th Floor<br>             (Hon. James Larson) |

PLAINTIFF'S OBJECTION TO DESTRUCTION OF EVIDENCE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

BRIEF SUMMARY OF FACTS AND RELEVANT PROCEDURAL HISTORY ................ 1

ARGUMENT ......................................................................................................................... 4

    I.    THE PLAINTIFF'S AND THE PUBLIC'S INTEREST IN PRESERVATION AND INDEPENDENT EXAMINATION OF THE CLOVERDALE AND OAKLAND BOMBS AND THE "LP SCREWS MILLWORKERS SIGN" ................................................................ 4

    II.   THE ITEMS IN QUESTION ARE NOT CONTRABAND ........................................ 6

    III.  THE COURT HAS BROAD DISCRETION TO FASHION AN ORDER IN THIS CASE PRESERVING THE EVIDENCE FOR EXAMINATION BY PLAINTIFF OR A THIRD-PARTY CUSTODIAN ........................................................................................ 7

    IV.  NOTICE AGAINST SPOILATION ............................................................................ 9

CONCLUSION ..................................................................................................................... 9

CERTIFICATE OF SERVICE ............................................................................................. 10

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, CA

# TABLE OF AUTHORITIES

**Cases**

*Conservation Force v. Salazar*, 677 F.Supp.2d 1203 (N.D.Cal. 2009) ...................................... 6

*Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir. 1974) .................................................................. 7

*In re National Security Agency Telecommunications Records Litigation*, 2007 WL 3306579 (N.D.C.A.) ........................................................................................................ 8

*Purcell v. United States*, 908 F.2d 434 (9th Cir. 1990) ............................................................. 7

*Smith v. Katzenbach*, 351 F.2d 810 (D.C. Cir. 1965) ............................................................... 7

*United States v. Parlavecchio*, 57 Fed.Appx. 917 (3rd Cir. 2003) ........................................... 7

*United States v. Bein*, 214 F.3d 408 (3rd Cir. 2000) ................................................................. 8

*United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004) ............................................................ 8

*United States v. Castro*, 883 F.2d 1018 (11th Cir. 1989) .......................................................... 7

*United States v. Chambers*, 192 F.3d 374 (3rd Cir. 1999) ........................................................ 8

*United States v. Duncan*, 918 F.2d 647 (6th Cir. 1990) ........................................................... 8

*United States v. Harvey*, 78 Fed.Appx. 13 (9th Cir. 2003) ....................................................... 8

*United States v. Hess*, 982 F.2d 181 (6th Cir. 1992) ................................................................ 8

*United States v. Kaczynski*, 551 F.3d 1120 (9th Cir. 2009) ...................................................... 6

*United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974) ..................................................... 6

*United States v. McGlory*, 202 F.3d 664, 670 (3d Cir. 2000) .................................................. 8

*White Fabricating Co. v. United States*, 903 F.2d 404 (6th Cir. 1990) .................................... 7

**Rules**

F.R.A.P. 32.1 ................................................................................................................................ 8

F.R.Crim.P. 41(g) ......................................................................................................................... 7

## INTRODUCTION

According to the terms of the settlement agreement in this case, the United States is required to notify plaintiffs before it destroys any evidence. On June 30, 2010, Counsel for the FBI informed plaintiffs' counsel that the government plans to destroy the remains of the two bombs in the case, the Oakland car bomb, and a bomb planted two weeks earlier at a mill in Cloverdale, CA which the parties generally agree were built by the same hands.

Darryl Cherney, the sole surviving plaintiff and victim of the Oakland car bombing, hereby objects to the government's destruction of evidence, and moves for an order directing the United States, by and through the FBI, to preserve and make available to him for testing and examination the remnants of the Cloverdale and Oakland bombs, along with a cardboard sign with the handwriting "LP Screws Millworkers" apparently left behind by the bomber(s) at Cloverdale.

This Court has inherent equitable jurisdiction over this matter, notwithstanding the fact that this case is closed. (See Argument, Part III, below.)

## BRIEF SUMMARY OF FACTS AND RELEVANT PROCEDURAL HISTORY

The Court will recall the basic facts of this historic and closely examined case, revolving around the still-unsolved car bomb assassination attempt on the late Judi Bari, which grievously injured Judi and also injured her passenger and fellow environmental organizer, Darryl Cherney. (Tragically, after surviving the car bombing and making a miraculous recovery, Judi succumbed to cancer seven years later.)

The bomb, rigged to be triggered by the motion of the car, exploded up into Judi's body while she drove on Park Boulevard in Oakland, just before noon on May 24, 1990. (Ex. 1 (photos). Shortly after the bombing, FBI agents and Oakland police officers arrested the pair and accused them—in the teeth of overwhelming evidence to the contrary—of supposedly transporting an armed, motion-triggered, nail-studded, "anti-personnel" bomb, on their way to use it in an unspecified terrorist attack. Although the case and the sensational charges against the supposed "eco-terrorists" from Earth First! drew headlines coast to coast, the Alameda County

1

1  District Attorney's Office dropped all charges on July 14, 1990. (Ex. 5 (FBI summary, p2); Ex.
2  9 (selection of articles)).

3      About two weeks before the Oakland bombing, a device so similar in construction that
4  the FBI concluded that the same person(s) built both bombs, partially detonated outside the
5  office of Louisiana Pacific's Cloverdale Mill, along Highway 101 in Sonoma County, CA. The
6  Cloverdale pipe bomb popped one of its end caps off and scorched some of its components, but it
7  did not ignite a gas can adjacent to it. A hand-lettered cardboard sign left near the bomb
8  (unburned in the non-fire) proclaimed "LP Screws Millworkers." (Ex. 3 (Cloverdale report and
9  photos; FBI Airtel, 5/31/90); Ex. 5 (FBI Summary, p2)).

10      At first, there was no public report or media coverage of the Cloverdale bombing. Then,
11  six days after the Oakland bomb, the Santa Rosa Press Democrat received a letter from someone
12  calling himself the "The Lord's Avenger," claiming credit for building both bombs. The Lord's
13  Avenger railed against Judi Bari as an unnatural woman, abortionist, and tree idolater; said he
14  left the Cloverdale bomb to "bring infamy" down on her; and claimed that divine intervention
15  delayed the car bomb so it would injure Darryl too. He claimed that the Lord spared Judi's life
16  in order to punish her with excruciating pain. And in cold, methodical detail, he described the
17  construction of both bombs. (Ex. 4 (Lord's Avenger letter)).

18      The evidence was in conflict as to whether Sonoma County Sheriff's deputies followed
19  protocol in alerting the FBI to the Cloverdale bombing at the time, though an OPD spokesman
20  informed the press shortly after the bombing in Oakland that they were looking into the
21  (attempted) bombing in Cloverdale as a possible related act of terrorism by Earth First! (See
22  Decl. of Dennis Cunningham). However, it is clear from the record that the FBI only expressed
23  public interest in the Cloverdale bomb and dispatched agents to collect it, and examined it, after
24  the Lord's Avenger letter surfaced. (Ex. 3 (FBI Airtel, 5/31/90; Press Democrat article, 5/26/90;
25  FBI lab report, 6-13-90)). The FBI has had possession of the Cloverdale bomb remains ever
26  since.

27      A year later, Judi and Darryl sued the FBI and Oakland Police for conspiring to violate
28  their First and Fourth Amendment rights with the intent to smear and discredit them and their

"Redwood Summer" campaign to preserve California's ancient forests from corporate chainsaws and to preserve timber jobs. The trial in 2002 centered on the question whether the bomb was hidden from view under Judi's seat – "where the hole was," as plaintiffs' expert expertly testified – or instead, was in open view on the back seat floorboard, visible to plaintiffs while they loaded their instruments into the car that morning.

On June 11, 2002, the Jury found for plaintiffs and returned a historic, $4.4 million verdict against FBI agents and Oakland police, officers, awarding roughly 80% of this sum for violation of plaintiffs' First Amendment rights, vindicating their basic claim that the government had sought to frame them and discredit Earth First! in order to "neutralize" their organizing campaign in defense of the ancient forest. (See Decl. of Dennis Cunningham).

**   **   **   **

On June 30, 2010, in accordance with the terms of the settlement agreement in the case (see Decl. of Dennis Cunningham), the Department of Justice informed plaintiff's counsel that the FBI intended to destroy "contraband" evidence left over from the case; namely, the remnants of the Cloverdale and Oakland bombs. (Ex. 1 (email from Defense Counsel)). The parties disagree whether and to what extent these materials are contraband, and whether and to what extent plaintiff can have access to them for examination.

It is at least clear that the government is done investigating the case, particularly because it is poised to destroy this evidence. However, that does not mean its usefulness or potential importance is over. When the bombs exploded in 1990, DNA testing was in its infancy, at best. Police did not routinely perform such testing, and perpetrators did not know to cover their genetic tracks. Today, of course, DNA testing breaks cases open, including many cold cases.

Plaintiff avers that independent, third-party DNA testing of the Cloverdale and/or Oakland device components, along with the "LP Screws Millworkers sign," provides the last best hope for learning who bombed Judi Bari, and he intends to and is prepared to undertake those arrangements and expenses. Certainly the bombing case(s) remain open, and important, so it cannot be said the physical evidence (with or without positive DNA results) will never be needed. (See Declaration of Darryl Cherney).

LAW OFFICE OF DENNIS CUNNINGHAM
San Francisco, CA

The public's interest in the Judi Bari case is extensive and profound. Environmentalists and other progressive activists regard Judi as a folk hero due to her skill and success in forging common ground between polarized timber workers and environmental activists, her courage in persevering despite threats and a crippling assassination attempt, and of course for winning a historic civil rights victory against repressive elements in government which sought to silence her. Books about the case have been and are still being written. Films have been and are still being made. The Judi Bari bombing and trial continue to spark close examination and heated debate. But while theories abound, the one thing no one really knows is *who dunnit?* The FBI, interested only in a political smear of Judi, Darryl, and Earth First!, never honestly investigated the attack, and as a result let the bomber(s) get away. (See Ex. 8, pp. 32-36).

Solving the Judi Bari bombing is more than a matter of excited public interest. It is a matter of historic significance. Wherever the evidence leads, it will afford valuable lessons about the role of government in a society still struggling to learn how to provide equal protection under the law to all of its inhabitants.

## ARGUMENT

### I. THE PLAINTIFF'S AND THE PUBLIC'S INTEREST IN PRESERVATION AND INDEPENDENT EXAMINATION OF THE CLOVERDALE AND OAKLAND BOMBS AND THE "LP SCREWS MILLWORKERS SIGN"

The parties agree generally that the same person(s) built both the Cloverdale and Oakland bombs. (Ex. 5, FBI Summary, p.2). The bombs hold the key clues to the unsolved attempted murders of Judi Bari and Darryl Cherney. Since the bombing in May, 1990, it has been a major source of contention among the parties whether authorities sincerely followed any leads in the case, or only used the bombing as a pretext to smear Judi and Darryl, as plaintiffs alleged and the jury's verdict effectively substantiated. While it has been years since authorities last repeated their refrain that Judi and Darryl were "the only suspects" (Ex. 9), there is no indication that they have or ever will reopen the investigation to look elsewhere. On the contrary, their notice that they intend to destroy the remaining bomb evidence establishes that they have permanently closed their investigation. (Ex. 1). On this record, it is fair to say that the best of hope of solving

the bombing rests with the surviving plaintiff, Darryl Cherney, who has already spent considerable efforts and sums independently investigating evidence in the case. (See Declaration of Darryl Cherney).

Plaintiffs included the bombs and components, the "LP Screws Millworkers" sign, and photographs of this evidence in their trial exhibit list, and variously introduced them at trial and moved them into evidence where appropriate. The government raised no objection in their objections to plaintiffs' exhibit list. (Ex. 6 (Pltffs' Exhibit List); Ex. 11 (Defs' Objections); see also, Decl. of Dennis Cunningham). Plaintiffs long argued that the FBI's belated interest in the Cloverdale bomb (arising only after the Lord's Avenger letter surfaced and claimed responsibility for both bombs), along with the FBI's failure ever to analyze the usable fingerprint it lifted from the "LP Screws Millworkers" sign, revealed the government's goal of framing Judi and Darryl rather than catching the actual culprit(s), substantiating plaintiffs First Amendment claims. (See Ex. 8, pp. 24-26, 32-33).[1]

The most vexing questions left in the case center on the bomb evidence itself, including of course who built the bombs, who the Lord's Avenger is, what role he actually played in the bombing, whether the FBI vigorously pursued all leads in the case, and if not, why not? (See Decl. of Darryl Cherney).

The public's interest and right to know cannot be overstated, whether measured by the seriousness of the events, the historic nature of the case, the amount of interest and media it has generated, or the potential lessons for society if we are able to solve the mystery. Conversely, the government has no legitimate interest in destroying this evidence (rather, only an extension of its original malign interest), and no prejudice to suffer in preserving it and relinquishing it to this plaintiff or to a reliable third-party custodian for examination and testing.

---

[1] The FBI plainly reported that it lifted a "latent print of value" off the "LP Screws Millworkers" sign, and the lab examiner promised a separate report of the results (Ex. 3 (5/31/90 FBI Airetel and 6/13/90 FBI lab inventory)), but the FBI either never followed up, or at least has never revealed what if anything it learned. (See Decl. of Dennis Cunningham).

## II. THE ITEMS IN QUESTION ARE NOT CONTRABAND

The government has taken the position that the bomb remnants must be destroyed because they are contraband. However, this is plainly inaccurate. The law recognizes two types of contraband: contraband *per se* and derivative contraband. See, e.g., *United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974). Possession of the former, such as narcotics, is always illegal; possession of the latter is only illegal if its illegal use makes it illegal. *Id*. Courts will never order return of contraband *per se*, but will examine the particular circumstances involved in cases seeking return of derivative contraband. See, e.g., *Conservation Force v. Salazar*, 677 F.Supp.2d 1203, 1210 (N.D.Cal. 2009) ("derivative contraband is susceptible to protectible property rights and cannot be civilly forfeited without a modicum of due process protection"). In *United States v. Kaczynski*, 551 F.3d 1120 (9th Cir. 2009), the Unabomber sought return of bomb making material to his designee. The Court accepted without deciding that the materials in question were derivative contraband, not contraband per se, but denied his request on the grounds that he had unclean hands. *Id*. at 1129-1130. In the present case, plaintiff's hands are clean because he is the victim, not the bomber, and because he seeks custody or access to the material for the worthy purpose of furthering the investigation and completing the historical record of the case. (See Decl. of Darryl Cherney).

The only portions of the bombs which might arguably be considered contraband are any explosive powder residues. However, the Oakland bomb powder presumable was consumed and that in the Cloverdale bomb mostly consumed or scattered. Regardless, the FBI would have stored it separately for safety, and plaintiff is not requesting the powder, if indeed any remains. (See Decl. of Darryl Cherney).

The other components are all commonly available items (e.g. batteries, light bulb sockets, wires, watches, nails, etc.). The manner in which the bombs were constructed is neither complicated nor secret—not least because the bombs have been so extensively described and photographed in this case. And with respect to the Oakland bomb, most of the components were blown up and remain only as fragments. (See photos, Ex's 1 and 2). Thus, the FBI cannot claim

that releasing these materials to plaintiffs or a third-party risks disclosure of any secret or dangerous material, formula or design.

Finally, defendants have not even alleged that the "LP Screws Millworkers" sign is contraband.

## III. THE COURT HAS BROAD DISCRETION TO FASHION AN ORDER IN THIS CASE PRESERVING THE EVIDENCE FOR EXAMINATION BY PLAINTIFF OR A THIRD-PARTY CUSTODIAN

The Court has broad equitable discretion to fashion an order related to the preservation and examination of evidence in a case. F.R.Crim.P. 41(g) provides the essential framework for this motion, which should be treated, according to the Rule, as a civil proceeding. While no case directly on point is found, the case law interpreting Rule 41(g) makes clear that it is rule of equity, and that courts have inherent power to extend it to novel situations. "This Court is not without the power to fashion a remedy under its inherent equitable authority. [Former] Rule 41(e), Fed.R.Crim.P., is a crystallization of a principle of equity jurisdiction. That equity jurisdiction exists as to situations not specifically covered by the Rule." *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989), citing *Smith v. Katzenbach*, 351 F.2d 810, 814 (D.C. Cir. 1965); *see also Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) ("the theoretical basis of jurisdiction to order pre-indictment return or suppression [of seized property] is grounded in the court's supervisory power over its officers), *cert. denied*, 420 U.S. 927 (1975). "Reliance on the Federal Rules of Criminal Procedure is unnecessary and misleading as to the nature of the proceedings if no indictment or information has been filed." *Purcell v. United States*, 908 F.2d 434, 437 (9th Cir. 1990) (treating motion for return of property seeking the return of property seized by the government as a civil proceeding if no indictment or information has been filed). *Accord, White Fabricating Co. v. United States*, 903 F.2d 404, 407-408 (6th Cir. 1990). *And see United States v. Parlavecchio*, 57 Fed.Appx. 917, 920 (3rd Cir. 2003), recognizing "that the District Courts' jurisdiction to entertain [former] Rule 41(e) motions is ancillary to the underlying criminal proceedings and that subject matter jurisdiction rests upon the District Courts' supervisory authority over these ancillary proceedings."

...

Under traditional Rule 41 analysis, "'[a] district court has both the jurisdiction and the duty to return the contested property once the government's need for it has ended.'" *United States v. Bowker*, 372 F.3d 365, 387 (6th Cir. 2004), quoting *United States v. Hess*, 982 F.2d 181, 187 (6th Cir. 1992) (vacated on other grounds by 543 U.S. 1182, reinstated by 125 Fed.Appx. 701 (2005). A court should "balance[] the competing equities in deciding whether return [is] in order." *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990). "A district court has jurisdiction to entertain a motion for return of property even after the termination of criminal proceedings against the defendant; such an action is treated as a civil proceeding for equitable relief." *United States v. Bein*, 214 F.3d 408 (3rd Cir. 2000), citing *United States v. McGlory*, 202 F.3d 664, 670 (3d Cir. 2000) (en banc). "Further, even if it is alleged that the property the movant seeks to have returned is no longer within the Government's possession, the district court has jurisdiction to determine whether such property had been in its possession and whether it wrongfully disposed of such property." *Id.*, citing *United States v. Chambers*, 192 F.3d 374, 378 (3rd Cir. 1999).

Based on such supervisory powers and on the equitable nature of such requests, courts have fashioned diverse remedies in particular cases. For instance, in *United States v. Harvey*, 78 Fed.Appx. 13 (9th Cir. 2003), the Court on remand conditioned the return of property on the plaintiffs' preservation of it for access by the government in any civil suit initiated by the plaintiff. And in *In re National Security Agency Telecommunications Records Litigation*, 2007 WL 3306579 (N.D.C.A.), Chief Judge Walker of this Court imposed a broad duty on the government to preserve evidence in the case.[2]

As discussed above, a balance of the equities here (*United States v. Duncan*, *supra*) tilts sharply in favor of plaintiffs' interest in preserving the bomb components and having them independently examined. Indeed, whereas plaintiffs and the public at large can show great prejudice resulting from its destruction, defendants cannot show any legitimate prejudice attendant upon making it available. Any particular concerns (e.g. as to timing, handling,

---

[2] Although designated "not reported," *In re National Security Agency...* is nevertheless fully citable under F.R.A.P. 32.1.

8

PLAINTIFF'S OBJECTION TO DESTRUCTION OF EVIDENCE

receiving party/ies, etc.) can be addressed in the tailoring of the order.

IV.   **NOTICE AGAINST SPOILATION**

Plaintiff hereby also notifies the government of his request that it preserve all evidence in the case, including the remnants of the two bombs and the "LP Screws Millworkers," in their complete, unaltered, and uncontaminated form; handle them only in accordance with the best standards and practices with which law enforcement officers are trained to handle evidence in a case; and preserve the chain of custody, pending the resolution of this dispute. Plaintiff requests Court supervision to enforce the same.

## CONCLUSION

WHEREFORE, Plaintiff respectfully objects to the government's planned destruction of the aforementioned evidence, and requests that this Honorable Court order that the United States preserve against loss, alteration, destruction, or contamination all components and remnants of the Oakland and Cloverdale bombs, along with the "LP Screws Millworkers" sign; fashion an order *in rem* making the same available to plaintiff, or to a reliable third-party custodian, for further examination and testing in this historic case; and grant such other relief as the Court deems appropriate in the premise of this historic civil rights case.

Respectfully Submitted,

DENNIS CUNNINGHAM
BEN ROSENFELD
WILLIAM SIMPICH

DATED: August 4, 2010

By: _____
DENNIS CUNNINGHAM
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

1. I, Dennis Cunningham, certify that on the date set forth below, I served the foregoing Motion, and the Declarations and Exhibits thereto, on Defendants R. Joseph Sher, AUSA, by causing true and correct copies of the same to be mailed to Mr. Sher at 2100 Jamieson Avenue, Alexandria, VA, 22314, first class U.S. postage prepaid. In addition, on the same date, I emailed courtesy copies of the same to Mr. Sher (at joe.sher@usdoj.gov) and to FBI Special Agent and Attorney Stefania Porcelli (at stefania.porcelli@ic.fbi.gov).

DATED: August 4, 2010

By: /s/ Dennis Cunningham
DENNIS CUNNINGHAM
Attorneys for Plaintiff