**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. C 91-01057 CW

JUDI BARI, et al.,

      Plaintiffs,

   v.

UNITED STATES OF AMERICA, et al.,

      Defendants.

_____/

ORDER DENYING
PLAINTIFF CHERNEY'S
RENEWED MOTION TO
STRIKE (Docket No.
678); GRANTING
DEFENDANT UNITED
STATES'S MOTION FOR
DE NOVO REVIEW
(Docket No. 673);
OVERRULING DEFENDANT
UNITED STATES'S
OBJECTIONS TO
MAGISTRATE JUDGE'S
ORDER (Docket No.
673); AND GRANTING
CHERNEY'S REQUEST
FOR ACTION (Docket
No. 682) AND MOTION
TO IMPLEMENT (Docket
No. 682)

The United States objects (Docket No. 673) to Magistrate Judge Larson's March 21, 2011 order sustaining Plaintiff Darryl Cherney's Objection to Destruction of Evidence of Who Bombed Judi Bari; granting Cherney's Motion for an Order in Rem Granting Access for Testing and Notice Against Spoliation; and denying the United States's Motion to Strike the Declaration of James Wheaton.  The United States moves for de novo review (Docket No. 673).  Cherney opposes the objection and, in his opposition, renews his motion to strike the United States's motion for de novo review, which the Court originally denied on April 26, 2011.  Cherney also requests action by the Court (Docket No. 682) and moves to implement the Magistrate Judge's Order (Docket No. 683).  Having considered all of the papers filed by the parties, the Court grants the United

States's motion for de novo review, denies Cherney's renewed motion to strike, overrules the United States's objection to the Magistrate Judge's order, and grants Cherney's request for action and motion to implement.  The Court affirms Magistrate Judge Larson's order.

BACKGROUND

Because Magistrate Judge Larson's order thoroughly describes the procedural and factual history of this case, which was originally filed two decades ago, that history will not be repeated here.  As is relevant to this order, Bari and Cherney brought the underlying lawsuit in 1991, alleging that Defendants, including the City of Oakland, the Oakland Police Department (OPD) and several named individual Oakland police officers and FBI agents, conspired to frame them for the May 24, 1990 bombing of Bari's car, in which Bari and Cherney themselves were seriously injured.  Later, <u>Bari v. United States</u>, C 93-1899 CW, was consolidated with this case and the caption of the case was changed to "<u>Bari v. United States</u>." The case was tried and the jury reached a verdict for Plaintiffs in 2002.  Thereafter, the parties engaged in protracted settlement discussions supervised by Magistrate Judge Larson.  In April 2004, Bari, through her executor, and Cherney entered into a settlement agreement with Defendants.  In addition to monetary relief, the settlement agreement included the following provision:

> 2a.  Non-monetary relief: The City defendants have stated their intention to release all evidence gathered in the underlying criminal investigation to plaintiffs (save and except for contraband items which plaintiffs would have no lawful authority to possess).  This will be reduced to a writing between the plaintiffs and the City defendants. The City will itemize any items withheld and the parties

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

                    will refer any disputes regarding withheld items for
                    resolution to Magistrate Judge Larson.

Cherney Ex. 10, Settlement Agreement paragraph 2a.[1]

     On May 14, 2004, Plaintiffs filed a partial satisfaction of
judgment, which stated that the individual Federal Defendants had
fulfilled the terms of the monetary portion of the settlement
agreement.  See Docket No. 663-1, May 14, 2004 Partial Satisfaction
of Judgment.  On June 18, 2004, this Court dismissed the case with
prejudice, retaining jurisdiction to enforce the settlement
agreement.

     At some point thereafter, the FBI contacted the Sonoma County
Sheriff's Department (SCSD) and the OPD to arrange for the return
of evidence the FBI had received from those agencies.  Docket No.
673, United States's Motion for De Novo Review at 5-6.  The SCSD
advised the FBI that it did not want the evidence returned to it.
Id. at 6.  At some later date, there were discussions between the
FBI, the OPD and Plaintiffs, after which the FBI acknowledged that
it would turn over to the OPD only the non-contraband evidence that
the OPD had provided to it and that the OPD would return the
evidence to Plaintiffs.  Id.  On March 25, 2009, the FBI turned
over some evidence to the OPD and the OPD simultaneously provided
it to Plaintiffs.  Id.

     The following evidence was not turned over to the OPD: the
fragments of the device which exploded in Bari's car, a partially-
exploded pipe bomb that was found at a Louisiana Pacific lumber

---

     [1]According to the United States, the writing alluded to in
this provision was never made.

3

mill in Cloverdale, California; a hand-lettered sign found near the
Cloverdale device reading "LP screws mill workers;" a fingerprint
obtained from the sign; an analysis of the fingerprint; and a
letter to the Santa Rosa Press Democrat newspaper, known as the
"Lord's Avenger" letter, by an individual claiming responsibility
for the Cloverdale device and the bombing of Bari's car.  The
Cloverdale device and the sign had originally been obtained by the
SCSD, but, as noted, that agency had indicated that it did not want
the evidence returned to it.  The Lord's Avenger letter was
returned to the Santa Rosa Press Democrat, which had originally
received it and turned it over to the FBI in 1990.

In June 2010, counsel for the United States informed Cherney's
counsel that the remaining evidence would be destroyed.  Cherney
filed the objection and motions described above and noticed them
for a hearing before Magistrate Judge Larson.  He asked that the
evidence not be destroyed but be released for third party testing,
either for use in a criminal prosecution or in a civil suit by
Cherney.  In support of his motion, Cherney attached the
declaration of attorney James Wheaton, which addressed the
understanding of the parties at the time of the settlement
agreement regarding the disposition of the evidence.  The United
States opposed the motion, arguing that the Court lacked
jurisdiction to provide the relief requested by Cherney.  The
United States also filed a motion before Magistrate Judge Larson to
strike the Wheaton declaration as barred by the parol evidence
rule.  Magistrate Judge Larson held a hearing on September 8, 2010
and took the objection and motions under submission.

**United States District Court**
For the Northern District of California

On March 21, 2011, Magistrate Judge Larson issued an order sustaining Cherney's objection to the destruction of the evidence and granting his motions.  Magistrate Judge Larson denied the United States's motion to strike the Wheaton declaration, finding that it was admissible to interpret the settlement agreement, which was ambiguous.  Magistrate Judge Larson found jurisdiction and ordered:

> that the United States preserve against loss, alteration, destruction, or contamination all components and remnants of the Oakland and Cloverdale bombs, along with the "LP Screws Millworkers" sign, the "lifted" fingerprints, and any fingerprint analysis; and further orders that the same be transferred to a reliable third-party custodian, for examination and testing, when an appropriate custodian is identified by the Court.  Plaintiffs are hereby ordered to propose such a custodian for the Court's consideration.

March 21, 2011 Order at 23.

On April 5, 2010, the United States moved for de novo review of Magistrate Judge Larson's order.  On April 7, 2010, Cherney moved to strike the United States's motion, arguing that de novo review was unavailable because the United States consented to Magistrate Judge Larson's jurisdiction.  On April 26, 2010, this Court denied Cherney's motion to strike.  In his opposition to the United States's motion for de novo review, Cherney renews his motion to strike.

DISCUSSION

I.   Cherney's Renewed Motion to Strike

In denying Cherney's first motion to strike the United States's motion for de novo review, the Court found that Cherney had not identified a written consent by the United States to Magistrate Judge Larson's jurisdiction, and noted that the referral

5

**United States District Court**
For the Northern District of California

1   to Magistrate Judge Larson was made pursuant to 28 U.S.C.

2   § 636(b)(1)(B).  This was incorrect.  The referral was made

3   pursuant to Local Rule 72-1, and did not specify any section of

4   § 636.  Cherney now renews his motion, citing <u>Roell v. Withrow</u>, 538

5   U.S. 580 (2003), for the proposition that a party may impliedly

6   consent to a magistrate judge's jurisdiction.

7       <u>Roell</u> held that parties could impliedly consent to the

8   jurisdiction of a magistrate judge by appearing before him or her,

9   without expressing reservation, after being notified of their right

10  to refuse and after being told that the magistrate judge intended

11  to exercise case-dispositive authority.  <u>Id.</u> at 586.  Although the

12  United States appeared before Magistrate Judge Larson without

13  expressing reservation, it was not notified that Magistrate Judge

14  Larson would be entering an order that would not be subject to de

15  novo review or that it had a right to refuse this exercise of

16  jurisdiction.

17      The United States may have consented to Magistrate Judge

18  Larson's jurisdiction in the settlement agreement itself.

19  Paragraph 2a of the settlement agreement provided that "the

20  parties" would refer any disputes regarding withheld evidence to

21  Magistrate Judge Larson.  The United States argues that, because

22  the claims against it had been dismissed from the case before trial

23  and it was not mentioned specifically in paragraph 2a, it did not

24  consent to Magistrate Judge Larson's jurisdiction regarding the

25  disposition of the evidence.

26      The settlement agreement uses the term, "parties," without

27  explicitly defining it.  Defendants are referred to as "Oakland

28                                6

Defendants" and "Federal Defendants."  Paragraph 1(b) of the settlement agreement defines "Federal Defendants" as "federal defendants and the United States."  Together, Plaintiffs and the Oakland and Federal Defendants are referred to as "parties."  The settlement agreement is signed by an Assistant United States Attorney on behalf of the "Federal Defendants."  Thus, in every section of the settlement agreement where the word, "parties," appears, the United States is included.  There is no reason to interpret the word "parties" in paragraph 2a any differently from the way that word is used in all other paragraphs of the settlement agreement.  Thus, the United States appears to be one of the parties who agreed in paragraph 2a to refer any dispute regarding withheld evidence to Magistrate Judge Larson.  However, in an abundance of caution, the Court will review Magistrate Judge Larson's order de novo.

II.  The United States's Objections

    A.   Wheaton Declaration

        1.   Motion to Strike

Magistrate Judge Larson denied the United States's motion to strike the declaration of James Wheaton, who served as fee counsel for Plaintiffs in the underlying lawsuit and participated in the settlement negotiations between Plaintiffs and the Oakland and Federal Defendants.  The United States argues that Magistrate Judge Larson erred in finding that the settlement agreement was sufficiently ambiguous to allow the use of extrinsic evidence to interpret it.

Magistrate Judge Larson found the phrase, "all evidence

gathered in the underlying investigation," contained in paragraph 2a of the agreement, susceptible to two interpretations: (1) all the evidence from the underlying criminal investigation, even though the FBI, rather than OPD, was in possession of most of this evidence; or (2) only the evidence the OPD had gathered in the underlying criminal investigation.

The United States argues that Magistrate Judge Larson's finding of ambiguity did not take the entire agreement into account and cites Klamath Water Users Protective Ass'n v. Patterson, for the proposition that a "written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." 204 F.3d 1206, 1210 (9th Cir. 1999).

However, the United States does not indicate how the settlement agreement as a whole explains the contested phrase. The United States does not cite any portions of the agreement that clarify that this phrase refers only to the evidence gathered by the OPD. The Court affirms Magistrate Judge Larson's denial of the United States's motion to strike.

2.    Claimed Erroneous Factual Finding

The United States argues that Magistrate Judge Larson erroneously found that it was understood at the time that the United States would return all evidence in the case to Oakland. According to the United States, the statement by James Wheaton that it was understood that the FBI would return evidence to the "local law enforcement agencies from whence it came" makes clear that the evidence obtained by the SCSD would be returned to that department,

8

**United States District Court**
For the Northern District of California

1  not transferred to the OPD.

2      Although attorney Wheaton did state that the FBI would return

3  the evidence to the local law enforcement agencies that gathered it,

4  he also stated that it was the understanding of the parties that the

5  FBI would transfer "all the evidence" to the OPD, which would

6  transfer it to Cherney.  He explained that the reason paragraph 2a

7  did not refer to the FBI in the context of the release of the non-

8  contraband evidence to Plaintiffs was that counsel for the Federal

9  Defendants stated at the time that the underlying investigation was

10 being conducted by the OPD.  Wheaton said counsel for the Federal

11 Defendants represented that the evidence the FBI had did not belong

12 to it, but rather to local law enforcement agencies, and that the

13 FBI could only dispose of it by returning it to local law

14 enforcement agencies.  Further, the FBI could not destroy it or

15 enter into any agreement with a private party regarding its

16 disposition.  Thus, although some of the evidence had been gathered

17 by the SCSD, there was no reason for the Oakland Defendants and

18 Plaintiffs to believe that the FBI would return it to the SCSD,

19 given that the SCSD had provided it to the FBI, and it was the OPD,

20 not the FBI or the SCSD, that had been conducting the investigation.

21 The Court agrees with Magistrate Judge Larson's factual

22 determination that when the Oakland Defendants agreed to turn over

23 all of the evidence, except for contraband, they meant all of the

24 evidence, including that initially in the possession of the FBI,

25 which the parties expected the FBI to turn over to OPD.

26     B.   Jurisdiction

27     Magistrate Judge Larson found jurisdiction to enter his March

28                                    9

21, 2011 order on three bases: (1) the Court's jurisdiction to enforce the terms of the parties' settlement agreement; (2) jurisdiction pursuant to Federal Rule of Criminal Procedure 41(g); and (3) the Court's inherent equitable authority.  The United States disputes each basis and, for the first time, argues that Magistrate Judge Larson's order violates its sovereign immunity.

Because neither the FBI nor the United States was mentioned specifically in paragraph 2a of the settlement agreement, the provision that applies to the release of evidence to Plaintiffs and refers disputes to Magistrate Judge Larson, the United States argues that the Court's jurisdiction to enforce this provision of the agreement does not extend to the FBI.  Magistrate Judge Larson acknowledged that the FBI and the United States were not mentioned in paragraph 2a of the agreement, but rejected the United States's argument, based on estoppel:  "The Government should be estopped from asserting that the Court lacks jurisdiction to supervise the settlement agreement, where the Government, having been party to the three-way settlement negotiations, has not performed an obligation which gave rise to the terms of the agreement."  March 21, 2011 Order at 14:1-5.

The United States does not specifically challenge Magistrate Judge Larson's finding of estoppel.  The Court agrees with Magistrate Judge Larson's conclusion that the United States is estopped from arguing lack of jurisdiction to interpret and enforce the settlement agreement, even if it did not agree to Magistrate Judge Larson's jurisdiction.  Accordingly, the Court does not address the alternate grounds on which Magistrate Judge Larson

1   based his finding of jurisdiction.

2        The United States further argues that Magistrate Judge

3   Larson's order violates its sovereign immunity because there is no

4   statutory waiver of sovereign immunity allowing for the equitable

5   remedy of preservation of evidence.  Because the Court's

6   jurisdiction to enforce the settlement agreement provides a

7   sufficient basis to sustain Magistrate Judge Larson's order as to

8   the disposition of the evidence in this case, the United States's

9   sovereign immunity is not implicated.

10       C.   Contraband

11       Magistrate Judge Larson found that it was unnecessary to

12  determine whether the remnants of the Oakland and Cloverdale

13  devices are contraband because Cherney is requesting only that they

14  be transferred to a third party laboratory for testing.  The United

15  States contends that this was error because the settlement

16  agreement explicitly excludes contraband from the evidence that was

17  to be transferred to Cherney.

18       The United States cites United States v. Lussier, 128 F.3d

19  1312, 1315 (9th Cir. 1997), as well as several out-of-circuit

20  cases, defining pipe bombs as "destructive devices" under various

21  federal statutes.  The United States also cites United States v.

22  Wilson, 472 F.2d 901, 903 (9th Cir. 1972), an appeal of an order

23  suppressing certain explosive devices as evidence in a prosecution,

24  in which the court referred to "pipe bombs, blasting powder, and

25  impact fuses" as contraband.

26       Because the devices in this case are not fully-assembled,

27  functional explosives, but are either partially or fully exploded,

28                                  11

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Wilson and Lussier are not controlling.  The United States claims that the Oakland and Cloverdale devices are contraband per se, which is always illegal to posses.  Cherney claims that they are derivative contraband, which is illegal to possess only when used for illegal purposes.

Neither Wilson or Lussier addresses a distinction between contraband per se and derivative contraband.  However, this distinction is not relevant here because Cherney is not seeking to possess the devices.  Cherney states that he is "informed and believe[s]" that the two devices are no longer dangerous because any residual explosive powder has been removed.  Cherney Dec. ¶ 5. The United States has not disputed this contention.[2]

The Court affirms Magistrate Judge Larson's ruling that a determination of whether the devices are "contraband" is not necessary because Cherney is requesting only that they be transferred to a third party laboratory for testing.

E.   Disposition

Magistrate Judge Larson ordered that the evidence be preserved and transferred to a reliable third-party testing facility after one is identified by Cherney and approved by the Court.  The United States now suggests that, if the Court affirms Magistrate Judge Larson's order, Cherney should not be permitted to direct

_____

[2]In addition, the Oakland device apparently consists entirely of fragments.  While the United States indicates that the FBI Laboratory Explosives Unit confirmed at the time of the 2004 settlement negotiations that "the remains of a partially exploded incendiary device, as was the Cloverdale device, were considered contraband,"  Brief at 5, it makes no such statement regarding the Oakland device.  The fragments of an exploded bomb cannot be considered a "destructive device" at this point.

1  disposition of the evidence.  The United States urges the Court to
2  place the responsibility on the Alameda County District Attorney to
3  determine what, if any, further investigation or scientific testing
4  to undertake.

5      The settlement agreement provides no basis for ordering the
6  evidence transferred to the Alameda County District Attorney, nor
7  is there any indication that the District Attorney wants the
8  evidence.  In his motion to implement Magistrate Judge Larson's
9  Order, Cherney has identified Forensic Analytical Sciences as the
10  third-party laboratory to receive, test and store the evidence.
11  Cherney shall provide to the Court and to the United States
12  Forensic Analytical Sciences' qualifications, certifications and
13  capabilities, its plan for taking custody, testing and storing the
14  evidence, and a proposed order.  If the United States objects to
15  this organization or its procedures, it must, within fourteen days
16  from receipt of Cherney's proposal, explain the basis of its
17  objections and propose an alternate plan for the preservation,
18  testing and storage of the evidence.  The United States's plan
19  could propose disassembling the Cloverdale device or removing any
20  explosive powder, if necessary, so that it is not dangerous or
21  contraband.  It could propose providing the evidence to the OPD,
22  with the OPD then providing it simultaneously to the third party
23  laboratory.  If the United States files an objection or a plan,
24  Cherney may reply within seven days thereafter.

CONCLUSION

25
26      For the foregoing reasons, the United States's motion for de
27  novo review is granted, and its objections are overruled.  (Docket

28                                   13

United States District Court
For the Northern District of California

No. 673.)  Cherney's renewed motion to strike is denied.  Cherney's request for action (Docket No. 682) and motion to implement (Docket No. 683) are granted.  For the reasons explained in this order, Magistrate Judge Larson's March 21, 2011 Order is affirmed.  The parties shall proceed as outlined above.


     IT IS SO ORDERED.

Dated: 3/31/2012

                                        _____
                                        CLAUDIA WILKEN
                                        United States District Judge

**United States District Court**
For the Northern District of California

14